**[J-85-2024]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**TODD, C.J., DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, McCAFFERY, JJ.**

| | |
|---|---|
| HENRY EARL FERGUSON, | : No. 73 MAP 2022 |
| | : |
| Appellant | : Appeal from the Order of the |
| | : Commonwealth Court dated |
| | : December 22, 2021 at No. 123 CD |
| v. | : 2021 Affirming the Order of the |
| | : Cumberland County Court of |
| | : Common Pleas, Civil Division, dated |
| COMMONWEALTH OF PENNSYLVANIA, | : January 21, 2021 at No. 2020-4835 |
| DEPARTMENT OF TRANSPORTATION, | : CV. |
| BUREAU OF DRIVER LICENSING, | : |
| | : ARGUED: November 19, 2024 |
| Appellee | : |

**OPINION**

**JUSTICE MUNDY**                                    **DECIDED: July 22, 2025**

The issue presented in this appeal by allowance is whether, consistent with due process, a driver who resolved an earlier DUI charge via accelerated rehabilitative disposition (ARD) may have his privileges suspended based on a subsequent DUI conviction.

In 2012, Appellant was charged with driving under the influence (DUI), *see* 75 Pa.C.S. § 3802, and he successfully resolved that charge through ARD acceptance.[1] In 2020, Appellant was again charged with DUI, specifically, DUI-general impairment as an

---

[1] ARD acceptance is discussed below. Briefly, when a driver is charged with DUI under Section 3802 as a first offense in ten years, the prosecutor, subject to certain exceptions, may offer the driver the opportunity to resolve those charges through ARD, a diversionary program that does not result in a criminal conviction and is largely rehabilitative in nature.

ungraded misdemeanor under 75 Pa.C.S. §3802(a)(1). He was convicted based on his guilty plea. PennDOT received notice of his conviction and suspended his license for one year pursuant to Section 3804(e) of the Vehicle Code, which provides in relevant part:

**(e) Suspension of operating privileges upon conviction.--**

(1) The department shall suspend the operating privilege of an individual under paragraph (2) upon receiving a certified record of the individual's conviction of or an adjudication of delinquency for: (i) an offense under section 3802 . . ..

(2) Suspension under paragraph (1) shall be in accordance with the following: (i) Except as provided for in subparagraph (iii), 12 months for an ungraded misdemeanor or misdemeanor of the second degree under this chapter. (ii) 18 months for a misdemeanor of the first degree or felony of the third degree under this chapter. (iii) *There shall be no suspension for an ungraded misdemeanor under section 3802(a) where the person is subject to the penalties provided in subsection (a) and the person has no prior offense*.

75 Pa.C.S. § 3804(e) (emphasis added).

As can be seen, the above provision requires a one-year suspension unless the present conviction is for an ungraded misdemeanor under section 3802(a) where the person, *inter alia*, has no prior offense.[2] As for what constitutes a "prior offense," the Vehicle Code defines the term to include, *inter alia*, prior convictions and juvenile adjudications, and, most relevant to this matter, "acceptance of Accelerated Rehabilitative Disposition" to resolve a DUI charge lodged per Section 3802 within ten years before the date of the current offense. *See id*. §3806. Thus, under the statute Appellant's 2012 ARD acceptance qualifies as a "prior offense" for purposes of his license suspension stemming from his 2020 conviction.

---

[2] The other requirement is that the driver is subject to the penalties in subsection (a). In the instant case, there is no dispute that Appellant satisfies that prerequisite.

Appellant appealed his license suspension to the county court, which upheld it notwithstanding that the Superior Court's ruling in *Commonwealth v. Chichkin*, 232 A.3d 959 (Pa. Super. 2020), was still in force. *Chichkin* disapproved of enhanced criminal sentencing based on an earlier ARD in light of *Alleyne v. United States*, 570 U.S. 99, 103 (2013), which held that any fact that increases the mandatory minimum sentence for a crime must be submitted to a jury and proved beyond a reasonable doubt.[3] The county court in the present matter reasoned that the *Alleyne* principle does not apply to a license suspension which, as a civil penalty, "does not implicate the rigorous constitutional safeguards applicable in criminal matters." *Ferguson v. PennDOT*, 2021 WL 908562, at *2 (C.P. Cumberland Jan. 21, 2021).

The Commonwealth Court affirmed in a published decision. *See Ferguson v. PennDOT*, 267 A.3d 628 (Pa. Cmwlth. 2021). That tribunal agreed with the county court that a license suspension is a civil, collateral consequence of a DUI conviction. As such, the Commonwealth Court reasoned, it should be upheld so long as PennDOT produces an official record of the conviction and demonstrates it acted in accordance with applicable law. Therefore, the court continued, Appellant could only prevail if he could demonstrate the record of his conviction was inaccurate – something he failed to do. *See id*. at 633 (quoting *Spagnoletti v. PennDOT*, 90 A.3d 759, 766 (Pa. Cmwlth. 2013)).

We granted further review to consider whether Appellant's license suspension in these circumstances violates due process inasmuch as his successful completion of the ARD program in relation to the prior charge was not a criminal conviction. *See Ferguson v. PennDOT*, 280 A.3d 859 (Pa. 2022) (*per curiam*).

---

[3] After the events underlying this appeal, *Chichkin* was overruled by *Commonwealth v. Moroz*, 284 A.3d 227 (Pa. Super. 2022) (*en banc*), and *Commonwealth v. Richards*, 284 A.3d 214 (Pa. Super. 2022) (*en banc*). The substantive holdings of those decisions, in turn, were recently overturned by this Court in *Commonwealth v. Shifflett*, 335 A.3d 1158 (Pa. 2025).

Appellant primarily advances that drivers have a constitutionally-protected property interest in retaining their driving privileges, meaning any deprivation of that privilege cannot occur absent due process, including fundamental fairness. In *PennDOT v. Middaugh*, 244 A.3d 426 (Pa. 2021), he notes, this Court held a DUI-based license suspension was fundamentally unfair, thereby violating substantive due process, where PennDOT waited 28 months to notify the driver, and the delay resulted in prejudice to the driver. *See id*. at 438-39. Appellant posits it is likewise fundamentally unfair for a statute to equate a prior ARD with a prior conviction and accordingly to require a license suspension. He states the unfairness arises from the Vehicle Code allegedly treating an ARD participant as a recidivist where ARD requires no finding of guilt.

It is true that, if a driver successfully completes ARD, he can obtain a dismissal of charges, *see* Pa.R.Crim.P. 319, and an expungement of his arrest record, *see* Pa.R.Crim.P. 320.[4] Because ARD acceptance does not entail proof of guilt, the intermediate courts have held, for example, that successful ARD completion to resolve a charge of theft, standing alone, is not sufficient evidence of willful misconduct to deny unemployment compensation, *see Reading Area Water Auth. v. UCBR*, 137 A.3d 658, 663-64 (Pa. Cmwlth. 2016), nor is it equivalent to a *crimen falsi* conviction for purposes of impeaching a witness, *see Commonwealth v. Brown*, 673 A.2d 975, 979 (Pa. Super. 1996). *But cf., e.g., DeNillo v. Denillo*, 535 A.2d 200, 202 (Pa. Super. 1987) (finding a parent's ARD resolution as to a charge involving sexual misconduct relevant in a custody dispute to determine the child's best interests, at least where a *prima facie* case was established at a preliminary hearing). The question is whether that also means the government violates due process when it makes a driver with a prior ARD acceptance

---

[4] Although the driver's arrest record is ordinarily expunged absent objection by the Commonwealth, *see id.*, PennDOT is required to retain a record of the driver's ARD acceptance for ten years. *See* 75 Pa.C.S. § 1534.

ineligible for an exemption from the ordinary license suspension that follows from a criminal conviction on a DUI charge. *See* 75 Pa.C.S. § 3804(e). To answer that question, it is helpful briefly to review what due process requires of the government.

When the state seeks to deprive a person of a constitutionally protected interest such as driving privileges, *see PennDOT v. Middaugh*, 244 A.3d 426, 435 & n.11 (Pa. 2021) (affirming that the continued possession of a driver's license constitutes a constitutionally-protected interest whether labeled as a right or a privilege), it must provide "the process that is due." *Commonwealth v. Turner*, 80 A.3d 754, 764 (Pa. 2013). One facet of that process is procedural in nature. Under the "procedural due process" rubric, the affected person must be given notice and an opportunity to be heard. *See Shoul v. PennDOT*, 173 A.3d 669, 676 (Pa. 2017) (referring to these factors as the "fundamental requirement" of procedural due process) (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950)); *Commonwealth v. Maldonado*, 838 A.2d 710, 714 (Pa. 2003). The contours of such notice and opportunity are determined through a balancing test in which courts weigh the private interest at stake, the risk of an erroneous deprivation, and the government's interest. *See Bundy v. Wetzel*, 184 A.3d 551, 557 (Pa. 2018) (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).[5]

---

[5] A distinct set of procedural safeguards are required where the government seeks to impose criminal punishment. *See, e.g., Apprendi v. New Jersey*, 530 U.S. 466, 478 (2000) (describing the defendant's right to require the prosecution to prove guilt to a jury beyond a reasonable doubt).

To the extent Appellant may be understood to suggest those safeguards apply here on the basis that a one-year license suspension amounts to criminal punishment, *see* Brief for Appellant at 9, we reject the argument. *See, e.g., PennDOT v. McCafferty*, 758 A.2d 1155, 1162 (Pa. 2000) (holding that a one-year license suspension imposed by PennDOT based on an out-of-state DUI conviction was a civil collateral consequence of that conviction and not a criminal prosecution in violation of the driver's double-jeopardy rights); *Commonwealth v. Wolf*, 632 A.2d 864, 867 (Pa. 1993) (stating that a license suspension administratively imposed by PennDOT per the Vehicle Code is a collateral civil sanction and not a criminal penalty).

Appellant does not contend he was denied procedural due process. But due process also incorporates the distinct concept, under the label "substantive due process," that our organic law protects individuals from arbitrary and unjust legislation – a precept that has been held to subsist in the Fourteenth Amendment, which forbids states from depriving persons of life, liberty, or property without due process of law, as well as in Article I, Section 1 of our State Charter, which guarantees the right to life, liberty, property, and reputation. *See Shoul*, 173 A.3d at 677 (reciting that "a law which purports to be an exercise of the police power must not be unreasonable, unduly oppressive or patently beyond the necessities of the case" (quoting *Gambone v. Commonwealth*, 101 A.2d 634, 637 (Pa. 1954))); *Crawford v. Commonwealth,* 326 A.3d 850, 876, (Pa. 2024); *Khan v. State Bd. of Auctioneer Exam'rs*, 842 A.2d 936, 946-47 (Pa. 2004). It is on this facet of due process that Appellant's challenge rests. *See, e.g.*, Brief for Appellant at 7.

A claim that state action violates substantive due process invokes a means-end inquiry pursuant to which the reviewing court examines the relationship between the law and the governmental interest the law seeks to achieve. *See Ladd v. Real Estate Comm'n*, 230 A.3d 1096, 1108 (Pa. 2020) (citing and quoting *Nixon v. Commonwealth*, 839 A.2d 277, 286-87 & n.15 (Pa. 2003)). Such a challenge may be facial in nature, as we saw in *D.P. v. G.J.P.*, 146 A.3d 204 (Pa. 2016), where a child's parents challenged a Domestic Relations Code provision that gave the child's grandparents standing to file an action seeking partial physical custody solely based on the parents having separated. Applying strict judicial scrutiny as the appropriate means-ends inquiry because the statute burdened the parents' fundamental rights, we held the provision was not narrowly tailored to serve a compelling state interest and, as such, it violated the parents' substantive due process rights. We therefore severed the offending language from the statute. *See id*. at 216-17; *see also Shoul*, 173 A.3d at 682 (holding that a provision of the Vehicle Code

that imposed a lifetime disqualification from holding a commercial driver's license for persons convicted of certain drug crimes while using a motor vehicle did not violate substantive due process because it was rationally related to the legitimate governmental interest in deterring drug trafficking). Whereas *D.P.* involved a fundamental right, thus triggering strict scrutiny, *Shoul* did not, and hence, the right involved in that matter, as here, implicated rational-basis review.

A substantive due process challenge can also be mounted based on the way an otherwise legitimate law is applied in discrete circumstances. *See Middaugh*, 244 A.3d at 434 ("In outlier situations – that is, situations that depart substantially from the ordinary and expected application of a law – due process norms can be invoked to restrain enforcement of a law under the circumstances where it appears that the targeting of the particular person or entity in question will do little to achieve the evident legislative objective."). Thus, in *Middaugh*, a driver's privileges were suspended based on a DUI conviction, but for reasons that did not appear in the record, PennDOT did not notify him of the suspension for 28 months. By that time his personal circumstances had changed to the point the trial court found he would suffer substantial prejudice from the unexplained delay. Considering that his driving record had remained clean in the interim, we found the suspension had "lost much of its effectiveness [to achieve] its underlying legislative purpose," thus denying the driver the "fundamental fairness" with which the Constitution demanded he be treated by the government. *Middaugh*, 244 A.3d at 439; *see also Ladd*, 230 A.3d at 1103 (addressing the question of whether the Real Estate Licensing and Registration Act violated substantive due process as applied to a person whose activities were limited to managing a few short-term vacation rental properties).

The present challenge is facial. Appellant does not contend his situation is an outlier and that he should be exempt from an otherwise-valid statute. Instead, he

maintains Section 3804(e) facially violates due process by excluding anyone with a prior ARD acceptance from the exception to the license suspension requirement that ordinarily follows from a DUI conviction.

Legislation affecting driving privileges is evaluated under the rational basis test. *See Plowman v. PennDOT*, 635 A.2d 124, 126 (Pa. 1993). Where, as here, that standard is invoked as a matter of Pennsylvania constitutional law, the means-ends inquiry is still deferential but less so than if it had been implicated solely under the Fourteenth Amendment to the United States Constitution. The statute, like all duly enacted legislation, enjoys a strong presumption of validity, and it will only be invalidated if it violates the Constitution clearly, palpably, and plainly. *See Lohr v. Saratoga Partners, L.P.*, 238 A.3d 1198, 1209 (Pa. 2020). But instead of considering whether we may conceive of any plausible basis for the challenged provision, *see FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 309 (1993), we evaluate whether the statute bears a real and substantial relation to the ends sought to be achieved, and is neither patently oppressive nor unnecessary to those ends. *See Shoul*, 173 A.3d at 678.[6] In undertaking that evaluation, we do not purport to second-guess the wisdom or soundness of the public policy choices made by the General Assembly; we only ask whether a constitutional

---

[6] The concurrence would utilize this case to disapprove the *Gambone* standard applicable under our State Charter. We express no view concerning whether *Gambone* should be overruled in an appeal where the issue has been preserved and briefed, and is material to the outcome. *See Castellani v. Scranton Times, L.P.*, 956 A.2d 937, 954 (Pa. 2008) ("No party has asked us to overrule our precedent, and we have no briefing on the considerations affecting *stare decisis*. However legitimate the Dissent's concerns might be in an appropriate case, for decisional purposes, we respectfully do not believe they are appropriate here."). Although we did overrule precedent *sua sponte* in *Freed v. Geisinger Medical Center*, 971 A.2d 1202 (Pa. 2009), *opinion on reargument*, 5 A.3d 212 (Pa. 2010), the continued vitality of such precedent was material to the outcome of that case. Here, by contrast, Appellant cannot prevail under the traditional rational basis test or the *Gambone* standard. Because our reconsideration of *Gambone* would thus be advisory in nature, we leave the issue for a future case in which its resolution can have a practical effect on the result.

violation has occurred. *See id*.; *Program Admin. Servs., Inc. v. Dauphin Cnty. Gen. Auth.*, 928 A.2d 1013, 1017-18 (Pa. 2007) ("[I]t is the Legislature's chief function to set public policy and the courts' role to enforce that policy, subject to constitutional limitations.").

In forwarding his argument, Appellant paints Section 3804(e) of the Vehicle Code as a recidivist statute. *See, e.g.*, Brief for Appellant at 17. He claims he was convicted of an offense that "does not have a license suspension penalty," and that PennDOT is improperly treating him as a recidivist, which is the only reason it suspended his driver's license. Appellant asserts that this violates substantive due process because it is fundamentally unfair to impose a license suspension – which, again, he terms a "recidivist" measure – absent "proof of wrongdoing." *Id*. at 7; *see also id*. at 20 ("Without a finding of fault, it is improper to interfere with the enjoyment of a protected property interest."). He reasons that, here, there was no proof of wrongdoing because "[t]he acceptance of ARD disposition involves no finding of fault." *Id*. at 22.

What Appellant overlooks is that the finding of wrongdoing follows from his conviction for the *present* offense. That conviction is the direct statutory basis for his license suspension. In other words, PennDOT suspended his license because of his 2020 DUI conviction, not as a civil consequence for his 2012 ARD acceptance. Section 3804(e), quoted above, directs that when anyone is convicted of DUI, PennDOT must suspend that person's driver's license, subject to a narrow exception for which Appellant does not qualify.[7] This civil sanction is imposed under the Vehicle Code as an exercise of the state's police power "for the purpose of preserving the public health, safety and

---

[7] While Appellant repeatedly emphasizes that his presumption of innocence was never rebutted by his 2012 ARD acceptance, *see, e.g.*, Supplemental Brief for Appellant at 13 ("The critical difference between a conviction . . . and the acceptance of ARD . . . is and remains the presumption of innocence."), his presumption of innocence was rebutted in 2020 when he was convicted of DUI.

welfare," which has been termed "probably the most important function of government." *Commonwealth v. Mikulan*, 470 A.2d 1339, 1340 (Pa. 1983).

If the General Assembly had left that narrow exception out of Section 3804(e)(2) entirely, and simply made a blanket rule that everyone who is convicted of DUI is subject to a suspension of driving privileges, the entire premise of Appellant's argument would vanish. And such suspensions would bear an obvious "real and substantial relation" to the Commonwealth's undeniable interest in deterring drunk driving, *see Birchfield v. North Dakota*, 579 U.S. 438, 465 (2016) (observing that states have a compelling interest in deterring drunk driving), and in removing drivers who have been convicted of DUI from the Commonwealth's roadways for a period of time. *See Illinois v. Batchelder*, 463 U.S. 1112, 1118 (1983) (describing that state interest as "particularly strong"). As it is, the General Assembly has made essentially that very rule, albeit subject to a narrow exception for drivers who satisfy certain criteria, including that they have no prior convictions *or ARD acceptances*. *See* 75 Pa.C.S. § 3804(e)(2). The question becomes, then, whether it violates due process for the Legislature to determine that a driver in Appellant's position should not be eligible for the statutory exception.[8]

We find that such a legislative determination is neither unfair nor unreasonable, nor is the prescribed action oppressive or unnecessary to the legislative goals involved. When a driver is charged with DUI as a first-time offender under 75 Pa.C.S. § 3802, as a matter of legislative grace the driver may, at the district attorney's discretion, accept the terms of ARD as an avenue to avoid the criminal process. *See id*. § 3807(a). Such a driver is under no compulsion to accept ARD and enjoys the full panoply of constitutional

---

[8] Because we resolve this specific issue – indeed it is the central issue of the case – we have taken appropriate care to analyze "the statute that we have." Concurring Op. at 12. Our earlier reference to a hypothetical statute without the exception serves a limited purpose: to illustrate why Appellant is wrong in suggesting the challenged provision imposes a license suspension without a predicate finding of wrongdoing.

rights attendant to any criminal prosecution. *See* Pa.R.Crim.P. 317. But ARD, if the defendant does accept it, is not a "trivial mechanism for avoiding a conviction and expunging an arrest record. Rather, it is an intensive process involving personal assessments, safety classes, and addiction treatment, if necessary, all under court supervision for six months to a year[.]" *Whalen v. PennDOT*, 32 A.3d 677, 684 (Pa. 2011); *see* 75 Pa.C.S. § 3807(b). The court-imposed conditions may include those "imposed with respect to probation after conviction of a crime," such as restitution, costs, administrative expenses, and any other conditions agreed to by the parties. Pa.R.Crim.P. 316(A); *see* 75 Pa.C.S. § 3807(b). In some instances, a suspension of driving privileges must accompany the ARD acceptance itself. *See id.* § 3807(d)(2)-(4).[9]

These are only some of the terms a driver voluntarily agrees to in return for avoiding exposure to a criminal conviction and all of its potential adverse consequences. *See* Concurring Op. at 14 (listing other consequences). And while a driver's acceptance of ARD does not constitute an admission or finding of guilt, it does reflect a decision by the driver not to affirmatively dispute his commission of the offense as, for example, he agrees to undergo rehabilitation and to reimburse others for financial losses occasioned by his conduct. *See* 75 Pa.C.S. § 3807(b)(1)(v). Further, by the time a driver accepts

---

[9] Section 3807(d), entitled "Mandatory suspension of operating privileges," requires the court to "order the defendant's license suspended as follows: (1) There shall be no license suspension if the defendant's blood alcohol concentration at the time of testing was less than 0.10%. (2) For 30 days if the defendant's blood alcohol concentration at the time of testing was at least 0.10% but less than 0.16%. (3) For 60 days if: (i) the defendant's blood alcohol concentration at the time of testing was 0.16% or higher; (ii) the defendant's blood alcohol concentration is not known; (iii) an accident which resulted in bodily injury or in damage to a vehicle or other property occurred in connection with the events surrounding the current offense; or (iv) the defendant was charged pursuant to section 3802(d) [involving controlled substances]. (4) For 90 days if the defendant was a minor at the time of the offense." 75 Pa.C.S. § 3807(d).

We note parenthetically that Appellant's driving privileges were, in fact, suspended for 60 days in connection with his 2012 ARD acceptance. *See* RR. 74a-76a.

ARD, he has been advised of the charges lodged by the Commonwealth and has had a chance to obtain a lawyer or have one appointed. A court hearing has been held with the driver's counsel present in which the court has ensured he understands and agrees to the terms of the program. *See* Pa.R.Crim.P. 312, 313. If the driver successfully completes ARD, some indication thereof becomes part of his record of prior conduct so that, for example, he cannot again be considered for ARD on a subsequent charge within ten years, *see* 75 Pa.C.S. § 3807(a)(2)(i), and the ARD acceptance is considered in an evaluation of whether he is a habitual offender, *see id*. § 1542(c). *See generally supra* note 4.

We also cannot overlook that the new DUI charge arose after the driver, who had the right in relation to the earlier charge to require the Commonwealth to prove his guilt of every element of the offense to a jury beyond a reasonable doubt, voluntarily waived that right in favor of ARD and then elected to drive under the influence thereafter.[10] Because driving under the influence is a "life-threatening act," *Commonwealth v. Lutz*, 495 A.2d 928, 936 (Pa. 1985); *see also Mikulan*, 470 A.2d at 1341 (referring to the "carnage caused by drunk drivers" (quoting *South Dakota v. Neville*, 459 U.S. 553, 558 (1983))), it is in the public interest to deter that particular conduct through a license-suspension scheme per which drivers convicted of DUI must suffer a temporary loss of driving privileges if they resolved a prior DUI charge through ARD acceptance. Such individuals "have chosen to drive drunk after having been placed under court supervision, after having been enrolled in alcohol highway safety school, and [in some cases] after

---

[10] Appellant emphasizes that the only rights a driver waives by entering ARD are the rights to a speedy trial and to a statute-of-limitations defense, *see* Brief for Appellant at 18; Supplemental Brief for Appellant at 14, but that only applies where the defendant fails to complete ARD. *See* Pa.R.Crim.P. 312(2). Our present discussion relates to a driver who successfully completes ARD and subsequently drives under the influence.

having had their operating privileges suspended" in connection with the ARD. *Commonwealth v. Becker*, 530 A.2d 888, 892 (Pa. Super. 1987).

One of the primary goals of the ARD program is to incentivize drivers who have been charged with DUI to refrain from drinking and driving in the future. *Accord* Supplemental Brief for Appellee at 11 ("A licensee who accepts ARD . . . understands the gravity of a DUI violation and should be fully aware of the consequences of another arrest for DUI."). It is rational to believe an individual who completes ARD and thereafter drives while intoxicated is "less easily deterred from continuing to drink and drive than first time offenders who have had no prior contact with the criminal justice system." *Becker*, 530 A.2d at 892; *accord* Brief for Appellee at 6 (positing the General Assembly has permissibly determined that such drivers have "not demonstrated an understanding of the severe danger to the public caused by [their] driving under the influence"). Because such a driver has demonstrated through his actions that his prior ARD did not have the desired deterrent effect, the General Assembly concluded his driver's license should be suspended and, as such, the exception written into the statute should not apply. We perceive no substantive due process violation inherent in that scheme.

The order of the Commonwealth Court is affirmed.[11]

Chief Justice Todd and Justices Dougherty and McCaffery join the opinion.

Justice Wecht files a concurring opinion.

Justice Donohue concurs in result.

Justice Brobson did not participate in the consideration or decision of this matter.

---

[11] After oral argument concluded, Appellant filed a motion for post-submission communication pursuant to Pa.R.A.P. 2501, which allows such communication only where permitted at the time of oral argument or when there has been a material change in the status of a legal authority. Because the motion does not suggest any such change has taken place, and we did not permit the filing at oral argument, the motion is denied. *See Commonwealth v. Abdul Salaam*, 812 A.2d 497, 504 n.3 (Pa. 2002).